And we move to the third case this morning, United States v. Hatch. Mr. Henderson. Good to see you again. You seem to be on all of my panels these days. May it please the Court, my name is Peter Henderson. I represent Ricky Hatch. There are two aspects of the District Court's sentence here that I'd like to focus on. The first is the feeling that Mr. Hatch has after the sentencing, that his sentence wasn't based on him as a person. It was based on the District Court's beliefs about general deterrence, about problems in Chicago. But the District Court started its sentencing by saying, look, everything in your individual characteristics is good. You've got a lack of criminal history. He's a first-time offender. He had steady employment. He had a stable family. All of these things suggest he's not at risk to recidivate. And yet he was sentenced to an above-guideline sentence, which are reserved for the worst, about 3% of offenders in the federal system. So one procedural or substantive error, whichever way the Court wants to look at it, is not adhering to the Supreme Court's admonition that each case should be a unique study in individual, and sentences should be particularized to the individual. The District Court here relied on ideas that would basically subject any defendant who had committed this crime to an above-guideline sentence. He's from Chicago, and it involves a gun. Now, it's clear from the District Court's comments that he imposed this sentence in recognition of what he considered to be the seriousness of the offense, but also to send a message, general deterrence. If I impose a sentence 50% above the guidelines range, then others will be deterred. We can make a dent into the problem of gun violence in Chicago. And unfortunately, the empirical evidence, the literature suggests that... Well, that's because they don't distribute that opinion among members of the public at large, particularly with gang groups. Right. I mean, the only people who know that Ricky Hatch has a 55-month sentence are him and the people in this courtroom. This isn't going to deter anybody. It should slow him down a little bit, though. Well, it's specific deterrence, yes. I don't think he'll do this again. Well, but Chicago does have, shall I say, a reputation for more lenient sentences in many areas with regard to gun offenses. I think that's true. In our district, this would be a guidelines range, and in Chicago we do see below-guidelines sentences often. But this, of course, was above the guidelines, and it was based not on particular individualized characteristics. Mr. Hatch, this offense... But wasn't Judge Guzman getting at the nature and circumstances of this offense when he talked about the geographical issues? Looking at this offense, in nature and circumstances of the offense, that's certainly one of the 3553A factors. But he focused on the fact that your client brought 17 guns into the Chicago area, and part of the crime, part of the nature and circumstances, was the fact that it happened here and what happens to those drugs. So why isn't that perfectly appropriate? Well, I think it's appropriate to consider the nature and the circumstances. Those particular aggravating circumstances, though, are accounted for in the guidelines. He would have had a guidelines range of about 10 to 16 months had it not been for the number of firearms and the fact that he brought them into Chicago. But the guidelines account for the number. That's correct. But there's nothing that says a judge can't vary from the guidelines if she thinks that they don't sufficiently account for the factors of the particular case. But it's not just the number of firearms. It's also the trafficking. So it's also bringing them into the area. Well, it's the trafficking, but there's nothing in particular about the guideline that says trafficking in Chicago. And that's what Judge Guzman was concerned about. Right. And even if there had been, back to my first question, is there any case law out there that says if a judge thinks that the guidelines don't sufficiently address the particular circumstances of the offense that she can't upward depart, as long as she gives the reasons, which she did here? Right. And so we think those reasons are inadequate. And what the cases tend to suggest is that a judge can, in the particular circumstances of the case, decide that the guidelines are inadequate. That's certainly within the judge's discretion. But what the judge shouldn't do is apply a categorical, because of this fact alone, that wouldn't distinguish you from any other defendant or any other case, I'm going to impose an above-guideline sentence. So there's no reason why somebody in Chicago, simply because of the fact they're in Chicago, should receive an above-guideline. You don't think being in Chicago is a crime by itself? No, I don't. But we cited the statistics that, again, the district court relied on, the FBI statistics. Chicago's not even in the top 10 in terms of dangerous communities where we're concerned about gun violence. There is a problem. There's no doubt. The guidelines take that into account, though. And the judge certainly considered the geographical issue here. But in imposing the sentence, the court also noted that the defendant did not appear to be fully accepting responsibility, that there was a need to promote respect for the law. So in imposing his sentence, he addressed all of the 3553A factors. And one of those happened to be, he thought, bringing 17 guns, trafficking them into Chicago, was particularly serious. Right, and that's where our arguments blend between procedural and substantive, because the judge did discuss some of these factors. But you just argued a moment ago that he enhanced the sentence solely on the basis that the guns were trafficked in Chicago. And based on the reading of the transcript, that's not what happened. He looked at all of those factors, including the fact that the defendant, which is significant when you're sentencing, didn't appear to be accepting full responsibility. Right. So I apologize if I said sole. What I mean to say is I think a fair reading of the transcript really points to two main problems the district court had. One was that this was guns in Chicago, and two was I need to send a message, general deterrence. I think, but wasn't there the other, as Judge St. Ian's talking about, that, for example, he fronted money to Kemp to buy the guns but didn't know why Kemp wanted them? Right. Things like that. Certainly. But, of course, the judge did award him acceptance of responsibility. So in the Smith case, this court said, you know, we shouldn't be giving inconsistent 3553A sentences when the judge has either denied or, in that case, denied acceptance of responsibility or, in this case, awarded acceptance of responsibility. But more to the point, even if he hadn't gotten those points for acceptance of responsibility, the guidelines range would still be below this sentence, and so that can't account for it. So I might suggest, and this is what we did at the end of our brief, a solution similar to what the court did in the United States versus Presley, is in light of really the uncontested evidence that this sentence will not have a general deterrent effect, let the judge consider that literature and decide whether he thinks that the sentence ought to be revisited. Did you raise the literature with Judge Guzman below? No. Just like the defendant in Presley didn't either. This court thought the literature was compelling enough to, I think the mandate was affirm but reconsider it. I see I'm running out of time. You don't have the academicians on the benches for you. Thank you. May it please the court. Katie Dirk on behalf of the United States. The defendant's sentence here should be upheld  That explanation was both consistent and explicitly rooted in the 3553A factors. Far from not being particularized to the individual, in explaining its sentence, the court specifically focused on the nature of the offense here and cited case-specific facts. The court noted, as is seen in the sentencing transcript, that this was not a one-time offense, that the defendant made three trips from his home in Chicago to a parking lot in Bloomington, Indiana, to purchase 17 pistols over three transactions. The court found it significant that the defendant went through all of that effort, went through all of that planning to commit this offense. The court additionally cited the fact that the defendant used a lifetime friend as a straw purchaser and implicated her in the commission of a serious felony. The court also noted the defendant's efforts to obstruct the investigation by instructing that lifelong friend to lie to law enforcement when she was confronted. The district court, as your honors have already noted, also noted that the defendant continued to minimize his own conduct. The district court said specifically that that bothered him greatly. Was that inconsistent with the district court's finding of acceptance of responsibility? Your honor, the district court specifically noted that. In deciding to award the defendant acceptance of responsibility points over the government's objection and over the probation department's objection, it stated that it narrowly viewed those points, that it looked to the plea agreement, the fact that he timely notified the government that he was going to plead guilty to the offense. However, I think showing a meaningful analysis here, he came back to that in looking at 3553A factors. So while he awarded those points, he came back to the defendant's characteristics, again at 3553A factors, and took great note that the fact that the defendant was minimizing his conduct. He noted specifically that that did not bode well for the defendant's rehabilitation and specific deterrence. What would the guideline range have been if he had not received acceptance credit? 41 to 51 months. So again, all of those things that I just stated, those are case-specific facts. The district court specifically noted the nature of the offense here. In explaining its sentence, the court did focus on the seriousness of the offense. The seriousness of the offense is really grave here. 17 pistols made its way from Indiana into Chicago. Five of those pistols were recovered by the Chicago Police Department. Two of the five were recovered within four to five days after the defendant purchased them in Indiana. Good for the cops, huh? Score one for the cops. Is there any indication in any place that the people in the gangs that are using these guns are aware of the cases? Your Honor, I think the focus on deterrence is one that the court specifically did focus on. I know what you're doing. I want to know whether there's any information, any place where you can look and say the gangs are aware of what he's saying. I don't have any specific information that the gangs are aware of. Is there any that you know of in existence? I do know that the U.S. Attorney's Office put out a press release after the sentence to try to get the word out that the U.S. Attorney's Office and the courts here take seriously. Were they sent it to the legal field or did they send it out to the gangs? I don't know that, Your Honor. I think that would be an interesting thing to look into if I were a prosecutor. Is any of this pointless or is it all pointless or is it really having some effect? I do not believe it's pointless. I don't believe the court believes it's pointless. The district court pointed to deterrence and the need for this sentence. Deterrence is a specifically denoted 3553. It certainly is, but not deterrence. Deterrence is a 3553. What it does is stops him from committing a crime during the time he's in jail. I don't think it has any effect on the public at large or his compatriots. Here the district court did note the need for deterrence, both specific and general, and the idea that this sentence needed to promote respect for the law. Those are 3553 factors. I don't doubt that the judge was sincere in that belief, but I'm trying to find out if there's any evidence that he's right. The district court and this court have said that judges are allowed to adopt and utilize their own penal philosophy. Oh, yeah. I used to do it myself when I was a district judge, but I want to know whether it's having any effect over the years. Your Honor, in all of the briefing, deterrence was noted in the government sentencing memorandum, and this was never raised. Probably the big deterrence is being in federal court rather than state court. Correct, Your Honor. That is a factor here. But, again, the crux of this is that the judge looked at the 3553A factors, he rooted his decision in the 3553A factors, and he adequately explained his decision. Do you know if the sentencing commission has done any work on the general deterrence issue?  I'm sorry. Can you explain to me why where gun violence in Illinois or Chicago is greater than Indiana, but Indiana has less restrictive gun laws? It would seem if they have less restrictive gun laws, you'd have more gun violence in Indiana. Your Honor, I think there's probably myriad reasons for that, and I don't know that I'm in the expert position to opine on that. I will say that. No, but it's constantly referred to that everybody goes to Indiana because they have less restrictive gun laws, and then they bring it back to a state that has very restrictive gun laws. It doesn't seem to make any sense. Your Honor, I mean, one of the reasons the government proffered here was because it's less traceable. He could have gone to an FFL closer to his home, but instead drove to Indiana, did these deals in a parking lot. Yeah, it would have been just as a lot of good in Indiana. You know, all these things are just abstractions, and there's nothing to do with the case at all. I appreciate that. For all of the reasons stated in our brief, for all of the reasons stated here today, the court should affirm the district court's judgment. Thank you. Thank you, counsel. Mr. Anderson, can you answer that question that I posed, that why gun violence in Illinois is greater than Indiana, that Indiana has less restrictive gun laws? Well, the best answer I can give you, based on the FBI statistics, we see gun violence in major metropolitan areas, regardless of the gun laws. Well, but Gary and Hammond have stated, Well, that's true. I think they would say there's a gun violence problem there too. But not to the extent on the south side of Chicago. Well, and again, part of this may be political. I know in our national discourse, Chicago is often sort of the gun boogeyman. So I'm not aware of the exact statistics to give you a good answer. But I wanted to address two more things on deterrence. One, the thing that does deter is the clearance rate. And we had a great presentation at our Seventh Circuit Conference this year about the clearance rate in Chicago, and it's very low. And the certainty of being caught is a much greater deterrent than any of the length of the sentence. And the other thing, Judge Keeney, you mentioned, federal court is a big deterrent. The thing is, when you're out on the streets, you don't know if you're going to be federal or state. You don't want to be in federal. You don't want to be in federal. But most crimes are in the state. And so that's one of the reasons in the literature why length of sentence doesn't deter, because there's just no way to predict where you're going to end up or what the sentencing consequences are. Mr. Henderson, do you know if the Sentencing Commission has done any work on the deterrence issue? No, I'm not familiar with that. I know deterrence in recent years especially has been raised more and more in these courts and so have the district courts we cited, but I'm not aware of the Sentencing Commission. Thank you. Thank you, Mr. Henderson. Thanks to both counsel, and the case is taken under advisement.